## PUEBLO DE SAN JUAN v. UNITED STATES.

### No. 315.

Circuit Court of Appeals, Tenth Circuit.

Feb. 18, 1931.

Charles Fahy, of Santa Fé, N. M. (R. H. Hanna and Fred E. Wilson, both of Albuquerque, N. M., and Wm. J. Barker, of Santa Fé, N. M., on the brief), for appellant.

George A. H. Fraser, Sp. Asst. to Atty. Gen.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

This is an appeal from a decree of the United States District Court for the District of New Mexico confirming an award of the Pueblo Lands Board to the Pueblo of San Juan under the provisions of Section 6 of the Pueblo Lands Act (43 Stat. pp. 637, 638). The pertinent provisions of such Section 6 are set out in the margin.[1]

It will be noted that the board is required to find: (1) The area and character of the lands and water rights awarded to the non-Indian claimants in its principal report; (2) whether such lands and water rights could have been recovered by the United States by a suit brought within ten years from the time the non-Indian claimants' adverse possession began or within ten years (the period prescribed by the limitation statute of New Mexi-

---

[1] Sec. 6. It shall be the further duty of the board to separately report in respect of each such pueblo—

(a) The area and character of any tract or tracts of land within the exterior boundaries of any land granted or confirmed to the Pueblo Indians of New Mexico and the extent, source, and character of any water right appurtenant thereto in possession of non-Indian claimants at the time of filing such report, which are not claimed for said Indians by any report of the board.

(b) Whether or not such tract or tracts of land or such water rights could be or could have been at any time recovered for said Indians by the United States by seasonable prosecution of any right of the United States or of said Indians. Seasonable prosecution is defined to mean prosecution by the United States within the same period of time as that within which suits to recover real property could have been brought under the limitation statutes of the Territory and State of New Mexico.

(c) The fair market value of said water rights and of said tract or tracts of land (exclusive of any improvements made therein or placed thereon by non-Indian claimants) whenever the board shall determine that such tract or tracts of land or such water rights could be or could have been at any time recovered for said Indians by the United States by seasonable prosecution of any right of the United States or of said Indians, and the amount of loss, if any, suffered by said Indians through failure of the United States seasonably to prosecute any such right.

The United States shall be liable, and the board shall award compensation, to the pueblo within the exterior boundaries of whose lands such tract or tracts of land shall be situated or to which such water rights shall have been appurtenant to the extent of any loss suffered by said Indians through failure of the United States seasonably to prosecute any right of the United States or of said Indians, subject to review as herein provided. * * *

At any time within sixty days after the filing of said report with the United States District Court for the District of New Mexico as herein provided the United States or any pueblo or Indians concerned therein or affected thereby may, in respect of any report upon liability or of any finding of amount or award of compensation set forth in such report, petition said court for judicial review of said report, specifying the portions thereof in which review is desired. Said court shall thereupon have jurisdiction to review, and shall review, such report, finding, or award in like manner as in the case of proceedings in equity. In any such proceeding the report of the board shall be prima facie evidence of the facts, the values, and the liability therein set forth, subject, however, to be rebutted by competent evidence. Any party in interest may offer evidence in support or in opposition to the findings in said report in any respect. Said court shall after hearing render its decision so soon as practicable, confirming, modifying, or rejecting said report or any part thereof.

co) after such possession began and after such lands came under the sovereignty of the United States; (3) as to the lands and water rights which could have been so recovered, the fair market value thereof, less the value of improvements made therein or placed thereon by the non-Indian claimants; and (4) as to the lands which could have been so recovered, the amount of loss, if any, suffered through the failure of the United States to seasonably prosecute an action therefor.

The board found that there were 17,584.77 acres in the San Juan Pueblo Grant; that the Indian title to 3,499.72 acres and the water rights appurtenant thereto had been extinguished; that 1,020.63 acres thereof could have been recovered for the Indians by a suit seasonably brought by the United States; that $60,758.94 was the value of such lands, exclusive of improvements placed thereon; and that the loss suffered by the Indians was $29,090.53. It awarded compensation to the pueblo in the latter amount.

Counsel for the pueblo contend (1) that an award should have been made for all the lands and water rights as to which the board found the Indian title to have been extinguished, and (2) that the award for the loss of the lands and water rights considered was inadequate.

■ The theory of the first contention is that it was impossible for the pueblo at any time since the grant, under the laws of Spain, Mexico or the United States, to have lawfully alienated its lands and that, therefore, all of it could have been recovered by the seasonable prosecution of actions by the United States.

There may have been a prior lawful overlapping grant so that the title of the non-Indian claimants was superior to the title of the pueblo. Furthermore, during the time the lands were under the sovereignty of Spain, lawful conveyances could have been made by the pueblo with the approval of the sovereign; and, during the time such lands were under the sovereignty of Mexico, there is strong basis for the proposition that the pueblo had authority to convey without the approval of the sovereign.

The act declares that upon review "the report of the board shall be prima facie evidence of the facts, the values, and the liability therein set forth, subject, however, to be rebutted by competent evidence." 43 Stat. 638, § 6; United States v. Board of National Missions of Presbyterian Church (C. C. A. 10) 37 F.(2d) 272–274.

Since there was a possibility that a portion of the lands, to which the Indian title had been extinguished, could not have been recovered by the seasonable prosecution of a suit or suits by the United States, the burden was upon the pueblo to overcome the findings of the board by competent evidence, and this it wholly failed to do.

■ The second contention is bottomed upon the assertion that the method employed by the board in arriving at the value of the land, which it concluded could have been recovered by the seasonable prosecution of a suit by the United States, was erroneous. Counsel assert that the board made no specific finding of the value of the land after deducting "improvements made therein"; that it did not base its findings upon the present value of the land but upon the value thereon in 1889 (the average date when the non-Indian claimants went into possession thereof), plus $10.00 per acre.

At the hearing before the district court, the pueblo offered no evidence in opposition to the findings of the board as to the value of the land exclusive of the improvements made therein or placed thereon by non-Indian claimants, and the loss suffered by the Indians. It offered no competent evidence from which the court could have made correct findings of such value and loss, even assuming that the findings of the board were incorrect. It leveled its attack at the methods employed by the board in arriving at its findings rather than at the correctness of the results obtained, and wholly failed to show that the findings as to value and loss were incorrect.

The act does not contemplate that the evidence before the board shall be brought before the district court and it was not in the instant case. Neither does it contemplate that the court shall examine into the methods employed by the board and if it finds that the board followed incorrect methods to then remand the matter to the board with instructions to follow correct methods and make new findings and a new award. On the contrary, it clearly provides that the court shall hear evidence as in a trial de novo in support of, or in opposition to the findings of the board and confirm, modify or reject such findings, and render its decision accordingly. Therefore, even if we assume that the methods employed by the board were subject to criticism, in the absence of evidence in opposition to the findings from which the court could have made correct findings, we fail to see how the court could have done otherwise than to con-

firm and ratify the findings and award made by the board.

We conclude the decree of the district court was right and it is affirmed.